PENNY, ADMINISTRATRIX *v*. GULF REFINING COMPANY.

4-9258                                   233 S. W. 2d 373

Opinion delivered October 30, 1950.

*Lee Ward,* for appellant.

*Charles Frierson* and *Kirsch & Cathey,* for appellee.

LEFLAR, J. Plaintiff administratrix brought action for the alleged wrongful death of her husband, Alfonzo Penny, who was killed in a highway collision between a milk truck which he was driving and a Gulf Oil Products truck driven by defendant Cooper assertedly acting as the employee of the other defendants. Plaintiff's complaint alleged negligence in defendant Cooper's driving as the cause of the collision. This the defendants denied. At the trial plaintiff introduced all her evidence, and rested, whereupon defendants moved for directed verdicts, which were granted by the Circuit Judge. Plaintiff appeals.

"A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury." *Hawkins* v. *Mo. Pac. R. Co., ante,* p. 42, 228 S. W. 2d 642, 644.

The evidence introduced by the plaintiff showed that decedent was driving his milk truck in a westerly direction on State Highway 34, a gravel road near Paragould. The oil truck was being driven by defendant Cooper in an easterly direction on the same road. Shortly before the collision a state highway truck, also being driven toward the east, had overtaken and passed the oil truck. The highway was dry and dusty, and there was apparently a great deal of dust in the air, perhaps enough to obscure vision. At the time of the collision, decedent Penny's truck and the state highway truck, going in opposite directions, had just passed each other. Penny's truck then collided with the oil truck, which was close

behind the state highway truck. The collision apparently occurred in the midst of a cloud of dust.

Alfonzo Penny, the only occupant of his truck, was instantly killed. Defendant Cooper, driver of the oil truck, was not called as a witness by the plaintiff and, since the motion for directed verdict was granted at the close of plaintiff's evidence, he did not testify at all. There were no other eye witnesses of the collision. Both trucks came to rest on the north side of the highway, which was the right side for the Penny truck and the left side for Cooper's oil truck. The Penny truck had been struck on its left side, and it came to rest close to the point of collision. The oil truck had its front wheels knocked off. These rolled to the north side of the road a hundred feet or more to the east of the Penny truck. The oil truck itself, without its front wheels, skidded on the front of its chassis to a point on the north side of the road variously estimated to be 150 to 250 feet east of the Penny truck.

The theory upon which plaintiff attempted to establish negligence in defendant Cooper was that Cooper was driving on the wrong side of the road, which fact was the proximate cause of the collision, and that Cooper was generally a negligent driver. Defendants' theory was that Alfonzo Penny was driving on the wrong side of the road, and that this fact was the cause of the collision. The burden of proof was of course on the plaintiff.

The only tangible evidence given as to whether the point of collision was on the south (Cooper's) side of the road or on the north (Penny's) side came from two witnesses who testified as to the nature and location of marks left on the road surface by the two trucks.

Witness Marvin Penny testified in detail as to these marks, supporting his testimony by reference to two photographs, also introduced in evidence, both taken at the scene of the collision shortly after it occurred. His testimony was that the skid mark of the oil truck chassis, "scooting" on the road surface after the wheels were lost, commenced well over on the south (Cooper's) side

of the roadway, and veered to the north side only as it came near to the point where the truck finally stopped, a considerable distance to the east of the point of collision. Both photographs also showed this skid mark commencing and continuing for some distance on the south (Cooper's) side of the road. In addition, Marvin Penny testified that the marks of the right hand dual tires of the oil truck were clearly visible on the south (Cooper's) side of the roadway, very near to the sodded line on the south edge of the graveled road. The testimony of this witness tends altogether to support the defendants' rather than the plaintiff's theory as to how the collision occurred.

The other witness who testified about the marks on the highway was Press Williams. He came to the scene about an hour after the accident, whereas Marvin Penny came up at once. The whole of Williams' testimony concerning marks on the highway was elicited on direct examination by plaintiff's counsel, and is quoted herewith:

"Q. You have said there was some kind of marks in the highway leading up to the Penny truck? A. It was the oil truck wheels where it looked like it was going to pull out and go around. Q. What I asked you about was physical marks on the road leading to the Penny truck. Did you observe any? A. Yes. Q. What kind were they? A. Looked like dual wheels. Q. Leading up to the Penny truck? A. Right past the wreck. Looked like it dug out two little holes. Q. I am afraid you don't understand what I am talking about. Was Mr. Penny's body still there? A. Yes, sir." (Tr. 75-76).

Plaintiff on appeal argues that this constitutes evidence that Cooper may have attempted to pass the state highway truck ahead of him just before he collided with Alfonzo Penny's truck, and that he had pulled over onto the left (Penny's) side of the highway in order to do so.

Press Williams' testimony, as quoted, was the only evidence from which this conclusion might have been inferred. We do not believe that his testimony would be

sufficient to sustain a jury verdict to the effect that this was what happened. The words "It was the oil truck wheels where it looked like it was going to pull out and go around," in the context in which they appear, are ambiguous, and we cannot say that they constitute any evidence to support plaintiff's theory as to how the collision occurred. This conclusion is buttressed by the fact that plaintiff's counsel apparently attached no special significance to the words at the time the witness testified, since he then said to the witness "I am afraid you don't understand what I am talking about." The true meaning of ambiguous words is usually much better understood by those who hear them when they are spoken than by others who read them later in the cold type of a formal record.

Another alleged error asserted by appellant is that the Court refused to allow witness Marron Mason to testify that the deceased Alfonzo Penny was habitually a careful driver and that the witness knew the defendant Cooper to be a careless and reckless driver. Without deciding whether this testimony should or should not have been admitted, it is enough now to point out that even had it been admitted it would not, in the absence of evidence sufficient to establish negligence in Cooper in the particular instance, have sustained a verdict for plaintiff. Since we hold that there was no evidence showing that Cooper was negligent in this instance, it follows that no prejudice resulted from exclusion of this part of Marron Mason's proffered testimony.

Finally, appellant contends that his case should have been given to the jury under the doctrine of *res ipsa loquitur*. This Court has held otherwise. *Arkmo Lumber Co.* v. *Luckett,* 201 Ark. 140, 143 S. W. 2d 1107. And see 8 U. of Ark. Law School Bull. 43. *Res ipsa loquitur* has no application unless the evidence in the particular case has a substantial tendency to show negligence in the defendant and in nobody else. That was not the state of the evidence here.

The judgment of the Circuit Court is affirmed.