SUPERIOR FORWARDING CO. v. GARNER.

5-2869                                      366 S. W. 2d 290

Opinion delivered March 25, 1963.

[Rehearing denied April 29, 1963.]

*Reid & Burge, Frierson, Walker & Snellgrove, J. F. Sloan, III,* for appellant.

*Pollard* and *Hastings,* By *Odell Pollard, Barrett, Wheatley, Smith & Deacon,* By *J. C. Deacon,* for appellee.

FRANK HOLT, Associate Justice. This is an action for the recovery of damages arising out of an accident involving three vehicles and resulting in the deaths of three persons. The appellee, William Francis Garner, administrator of the estate of Mrs. Mavis Jean Smith, sued Superior Forwarding Company, Inc., and Johnny Hunt,

the appellants, and the estate of Richard L. Palmer to recover damages for the benefit of Mrs. Smith's estate and her three minor children.

The appellee alleged in his complaint that the death of Mrs. Smith was a result of the concurring negligence of Johnny Hunt, the employee of Superior Forwarding Company, Inc., and Richard L. Palmer. The appellants filed their joint answer denying any negligence on their part and alleged, among other things, that the cause of the accident was the concurring negligence of Edward M. Spurlock, Mrs. Smith, and Richard L. Palmer. Various other pleadings were filed in this action. Upon a trial judgment for the appellee was rendered for $44,005.00. The jury apportioned the degrees of negligence at 50% to the Spurlock estate, 25% to the Palmer estate, and 25% to the appellants, Hunt and Superior Forwarding Company, Inc. The appellants made timely motions for a directed verdict which were overruled by the court.

On appeal appellants rely on several points for reversal, one being the point that the trial court should have directed a verdict for appellants, Superior Forwarding Company, Inc., and Johnny Hunt. Since we agree with the appellants on this point it is unnecessary to discuss the others.

The rule is well settled in our state that if there is any substantial evidence, when viewed in the light most favorable to the plaintiff and given its highest probative value, the question must be submitted to the jury. *Glidewell* v. *Arkhola Sand & Gravel Co.*, 212 Ark. 838, 208 S. W. 2d 4. We thus proceed to examine the evidence in this case.

This tragic accident, taking the lives of Mrs. Smith, Spurlock and Palmer, occurred on State Highway No. 63 four miles east of Hoxie, Arkansas at about 12:55 A.M. on December 24, 1960. Mrs. Smith, a widow, was a passenger in a 1957 Chevrolet hardtop automobile owned and operated by Spurlock. Palmer was alone, driving a 1955 Chevrolet convertible automobile. Hunt was the driver of a 1958 International trailer-truck owned by his

employer, Superior Forwarding Company, Inc. The appellee alleged in his complaint that Mrs. Smith and Spurlock were traveling west in the direction of Hoxie and were being followed by Hunt; that Palmer was driving east and was meeting Spurlock and Hunt when his car veered over the center line of the highway and collided with the Spurlock automobile and then Hunt's trailer-truck simultaneously collided with these two passenger cars.

During the trial, the court permitted the appellee to amend his complaint to conform to the proof and allege that he was entitled to recover regardless of what direction the Spurlock car was traveling. It could not be determined with any certainty from the testimony or physical evidence in which direction the Spurlock and Palmer vehicles were traveling. Hunt testified at the trial that he could not say which one of the vehicles he was following. He had previously given two written statements to the contrary. In fact, the court instructed the jury, without any objection, that as a matter of law, the vehicle being followed by the truck was free of negligence. This instruction reads as follows:

"You are instructed that the driver of the automobile proceeding on the highway toward Hoxie, Arkansas, under the undisputed evidence in this case is not guilty of any act of negligence and is not liable to any party in this action."

In spite of this instruction the jury found the drivers of both passenger cars negligent. It could be that the jury was unable to determine which of the two passenger vehicles preceded the truck. The court offered to have the jury consider further its failure to follow this instruction. The appellants objected. The court ruled the appellants could not later complain and overruled their motion for a new trial.

Palmer, 23 years of age, was a ministerial student at Bob Jones University at Greenville, South Carolina and had been visiting in the home of his finance's parents

at Fort White, Florida. He left there early on the morning of December 23, 1960, en route to his home in Kansas City, Missouri for Christmas.

Mrs. Smith, a widow 34 years of age with three minor children, on the night of December 23rd left her home between 8 and 8:30 P.M. in the company of Spurlock after making arrangements for the proper care of her children. Both Spurlock and Mrs. Smith were residents of Jonesboro, Arkansas. There is no evidence as to where the couple was going or at what time Mrs. Smith would return to the Smith home.

Hunt, the driver of the trailer-truck, was a resident of Little Rock, Arkansas, and an employee of Superior for about nine years. Since Mrs. Smith, Spurlock and Palmer were killed in this accident, Hunt is the only surviving eyewitness. Hunt testfied that he left Little Rock about 8 P.M. on the evening of December 23rd to make his regular round-trip to Jonesboro; that he left Jonesboro about 12:05 A.M., December 24th, to return to Little Rock; that he was proceeding west in the direction of Hoxie at about 50 miles per hour when he came up behind a car traveling in the same direction as himself and proceeding at a speed which Hunt estimated at about 40 miles per hour. He further testified that he was approaching the front vehicle for the purpose of passing when he saw the lights of an oncoming vehicle about a mile distant coming at what appeared to be a high rate of speed; that he slowed down his speed to that of the car preceding him and maintained a distance of 80 to 100 feet behind this car without ever attempting to pass it; that the highway was straight and level and when the oncoming car about 75 to 100 feet up the road from the other passenger car, its right wheels went of the pavement a foot or so onto the shoulder of the highway while still traveling at a fast rate of speed and then came back onto the pavement and crossed into the wrong lane running into the car preceding Hunt; that the vehicles collided with a "splattering" impact, like an egg dropped on the floor, about 90 to 100 feet in front of him, the force of the Jonesboro bound car pushing both cars back toward Hunt's truck, spinning clockwise together down

his travel lane and hitting the front of his truck in only a second or "just seconds", causing the truck to jack-knife and stop in such position with the trailer and most of the tractor in his proper traffic lane.

Hunt testified there wasn't much damage to his truck except from the fire. He testified that the first impact with his truck was not severe and did not jolt him very hard and the rest of the impact was at the drive axle. The front end of the Spurlock vehicle was found wedged under the right side of the tractor of Hunt's vehicle. Most of the rear section, or the main wreckage of Spurlock's car was found approximately 75 to 90 feet back of the trailer toward Jonesboro in the Hoxie traffic lane. The bodies of Spurlock and Mrs. Smith were at a point east of this main wreckage of the Spurlock car or about 100 feet from the rear of the trailer. Hunt further testified that while following the unknown vehicle he had taken his foot off the accelerator and had his foot on the brake but could not say that he did or did not apply his brakes at any time before the impact with his vehicle. There were no skid marks found from any of the vehicles.

The Palmer car came to rest on the north shoulder of the Hoxie bound traffic lane with its rear end near the edge of the highway, the front end pointed toward the northeast, or the ditch on the north side of the highway. The rear portion was about even with the front end of the trailer with a distance of about 8 or 10 feet between the trailer and the car. There was damage to the left front part of the car which would indicate a head-on collision. The right front door was damaged from a heavy blow. The rear portion was undamaged. Palmer's body was removed from his car.

The truck, the Palmer car and the front section of the Spurlock vehicle burned with portions of the asphalt road damaged by fire. Wreckage was strewn and scattered and it cannot be ascertained from the position of the vehicles which passenger car had been proceeding in which direction. Dirt, glass and debris were found on the highway from a point even with the tractor for a distance of approximately 125 feet to the rear of the

trailer. The only visible evidence of any cut or mark on the highway was approximately 75 to 100 feet east of the rear of the trailer. Appellee contends that the only logical explanation of the position of the impact with Hunt's truck is that it occurred somewhere in the vicinity of the main wreckage of Spurlock's car. However, there was no evidence indicating a dragging of the wreckage by the tractor. A state policeman testified that he investigated the accident immediately afterwards and on two other occasions that day but was unable to find "any evidence where the impact occurred."

According to Hunt, he experienced no ice or hazardous driving conditions before the accident. He first noticed some ice on a portion of the road after he got out of the truck and walked a few steps following the accident. Two drivers who traveled Hunt's route, coming up on the scene of the accident shortly thereafter, testified they had encountered no ice or hazardous driving conditions before they arrived. Another witness, who lives about "one-half of a quarter" from the scene of the accident, testified that upon being awakened by explosions from the gasoline and tires he walked to the scene and never observed any ice or slippery walking conditions. According to some witnesses, weather conditions were causing ice to form, moving from the north or Hoxie toward the scene of the accident. No witness testified that before the accident occurred there existed any ice or other hazardous road conditions between Jonesboro and the scene of the accident.

The specific acts of negligence attributed to Johnny Hunt on which appellee relies are: (1) Failed to keep a proper lookout, (2) was driving at a fast, reckless and unreasonable rate of speed for the then existing conditions, (3) failed to reduce his speed commensurate with existing road conditions, (4) failed to keep his vehicle under control, (5) was following too close, and (6) was carelessly attempting to overtake and pass the vehicle in front of him.

According to the evidence in this case, Hunt was keeping a proper lookout inasmuch as he observed the

oncoming car and thereupon stayed in his proper lane of traffic awaiting the approaching car to pass him. He also slowed his vehicle to a speed of approximately 40 miles per hour and maintained a distance of 80 to 100 feet behind the car preceding him without attempting to pass this vehicle. There is no proof there was any ice or hazardous driving conditions between Jonesboro and the scene of the accident.

The court instructed the jury properly, and without objection, that the maximum speed limit was 60 miles per hour. There is no evidence in this case that at any time Hunt failed to keep his vehicle under control. What more could Hunt, or any driver under the circumstances then existing, have done when this oncoming vehicle, moving at a high rate of speed, suddenly veered across the highway and crashed into the vehicle preceeding Hunt? *Shearman Concrete Pipe Co.* v. *Wooldridge*, 218 Ark. 216, 234 S. W. 2d 382. There is no proof that Hunt was traveling other than in his own proper lane, where he should have been, at all times before and after this accident. Under the provisions of Ark. Stats. Anno., 75-614, Hunt had a right to follow the preceding vehicle at a reasonable and prudent distance for the purpose of overtaking and passing it. Hunt denies, and there is no proof to the contrary, that he ever attempted to pass the vehicle in front of him. There are no physical facts in this record that Hunt's vehicle was ever out of its proper lane of traffic. In fact, when Hunt's vehicle came to rest the trailer was wholly within the proper traffic lane with the tractor in a jackknife position and the front end across the center line.

On the basis of the record presented to us in this case we are of the opinion that the trial court should have directed a verdict as requested by the appellants. As we view the evidence in this case, appellee's cause is based on inferences, speculation and conjecture. We do not find any substantial evidence to support any of the allegations of the appellants' alleged acts of negligence in this case. The burden was upon the appellee to produce some substantial evidence from which the jury might find some act or omission constituting negligence by the ap-

pellants as alleged in appellee's complaint. Such evidence can be established either by direct or circumstantial evidence but the appellee cannot rely upon inferences based on conjecture or speculation in order to establish proof of negligence.

In *Kapp* v. *Sullivan Chev. Co.*, 234 Ark. 415, 353 S. W. 2d 5, Mrs. Kapp was injured in a three-car collision in which her car seat belt broke. She brought suit against the appellee alleging that her injuries resulted from a defective seat belt. This court held that a directed verdict in favor of the defendant-appellee was proper and in doing so stated:

" * * * Several *possible* causes of the break are argued, but in truth, they are only *possibilities,* and do not reach the status of probabilities. Negligence cannot be established by guess work. As stated in *Henry H. Cross Co.* v. *Simmons,* 96 F. 2d 482, a decision under Arkansas law:

'To submit to a jury a choice of possibilities is but to permit the jury to conjecture or guess, and where the evidence presents no more than such choice it is not substantial, and where proven facts give equal support to each of two inconsistent inferences, neither of them can be said to be established by substantial evidence and judgment must go against the party upon whom rests the burden of sustaining one of the inferences as against the other.' "

In *Glidewell* v. *Arkhola Sand & Gravel Co.*, 212 Ark. 838, 208 S. W. 2d 4, this court said:

" * * * Conjecture and speculation, however plausible, cannot be permitted to supply the place of proof, * * * ".

In *Moran* v. *State,* 179 Ark. 3, 13 S. W. 2d 828, we said:

"* * * It is not allowable, under the rules of evidence, to draw one inference from another, or to indulge presumption upon presumption to establish a fact. Reasonable inferences may be drawn from positive or

circumstantial evidence, but to allow inferences to be drawn from other inferences, or presumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture."
See also *Martin* v. *Arkansas Power & Light Co.*, 204 Ark. 41, 161 S. W. 2d 383; 20 Am. Jur. § 165, p. 169.

It is true that since Hunt is a party-defendant his testimony is presumed to be disputed and contradicted. Either rejecting Hunt's testimony altogether or considering it in the light most favorable to appellee, there is still lacking any substantial evidence to support a verdict in favor of the appellee. In *Bennett* v. *Wood*, (CA 8) 271 F 2d 349, the court said:

"The rejection of Bennett's testimony relating to the facts surrounding the accident does not aid the plaintiff in establishing her case. The burden is upon the plaintiff to prove negligence which proximately caused the injuries claimed. Defendants do not have the burden of proving freedom from negligence. *Glidewell* v. *Arkhola Sand & Gravel Co.*, supra, 208 S. W. 2d at page 8; *Kisor* v. *Tulsa Rendering Co.*, DCWD Ark., 113 F. Supp. 10, 16."

Assuming we found sufficient evidence of negligence to constitute a jury question in this case, even then the verdict in favor of the plaintiff-appellee could not be permitted to stand. The appellee had the burden of proof to establish not only negligence on the part of the defendants-appellants, but also that such negligence was a proximate cause of Mrs. Smith's death. In *Kapp* v. *Sullivan, supra,* we said:

" * * * Negligence alone is not sufficient. It must be established that such negligence was a proximate cause of the damages suffered."

Hunt described the collision between the Spurlock and Palmer cars as a "splattering impact," somewhat like dropping an egg on the floor, resulting in it splattering and breaking into several pieces. The condition of Mrs. Smith's body was such that it appears her death was instantaneous. The oncoming vehicle, whether driven

by Spurlock or Palmer, was traveling at a high rate of speed when it collided with the other passenger car [either Spurlock's or Palmer's] which latter vehicle Hunt estimated to be traveling at approximately 40 miles per hour. Thus, the two vehicles collided at a combined speed which produced the described splattering result. According to Hunt he was approximately 100 feet behind the first impact and the two cars spun clockwise and collided with him after he had traveled about one-half the distance to the first collision.

According to the evidence in this case it is only by conjecture and speculation that it can be said in which direction the Spurlock and Palmer vehicles were proceeding at the time of the accident. Apparently the jury could not or refused to so find. It is only by conjecture or speculation that a jury could determine why the oncoming vehicle approaching at a high rate of speed swerved across the road and collided with the vehicle preceding Hunt; that this "splattering" impact did or did not instantly cause Mrs. Smith's death; that Mrs. Smith was or was not propelled from the vehicle in which she was a passenger at the time of this impact; that Mrs. Smith was or was not in the wreckage when it collided with Hunt's vehicle; that she was or was not dead when this impact occurred; that Hunt was negligent in any manner or that any negligence of his was a proximate cause for the damages sought herein.

We do not mean to say that a disinterested or non-party eyewitness is necessary. Physical facts can supply the required evidence. However, in this case the physical facts are in such hopeless conflict that they lead only to conjecture and speculation. Verdicts cannot stand on such evidence.

We stated the rule in *Turner* v. *Hot Springs Street Ry. Co.*. 189 Ark. 894, 75 S. W. 2d 675:

" * * * juries are not permitted to guess or speculate as to the proximate cause of an alleged injury, the burden resting upon [plaintiff] to show by a preponder-

ance of the evidence that her injuries were caused by some negligent act or omission of [defendant].''

See also *Bennett* v. *Wood, supra.*

The burden was on the plaintiff to prove not only the appellants were negligent, but such negligence was a proximate cause of the damages suffered. This causal connection cannot be proved by conjecture and speculation. This proximate cause must be proved by direct or circumstantial evidence as a fact. In this case there are insufficient proven facts, connected and related to each other, from which it can be reasonably inferred that any negligence on the part of appellants was a proximate cause of the accident.

It is our opinion that there was no substantial evidence of negligence or proximate causation to make a question for the jury. Therefore, we must reverse this judgment and dismiss this case. It is so ordered.

Johnson, J., dissents.

Jim Johnson, Associate Justice (dissenting). I do not agree with the majority view. In addition to the rule requiring that appelant Johnny Hunt's testimony be considered as disputed and controverted, there is a stronger rule applicable to this case which is set out in *Penny* v. *Gulf Refining Co.*, 217 Ark. 805, 233 S. W. 2d 372, as follows:

''A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances, the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury.''

Viewing the evidence according to the rules of this court, I find in appellant's own abstract the following testimony of a disinterested witness:

"My name is John Newton White and I live approximately 3½ miles east of Hoxie on Highway 63. I went to the scene of the accident on Highway 63 last December 24th. I was concerned for fear my daughter was in it. I was in bed, but was awake, waiting on my daughter to get home. She should have been in and I was concerned about her. The road was slick at the time, not real bad but dangerous. About dark that night I had been out seeing about the stock and it had been raining and getting freezing weather. I heard the crash, looked out the window and saw the fire. I had heard a car pass my house before making a noise like it had a leaky muffler. I just heard one crash. I got up and called the ambulance and police and then walked to the scene. I had to walk careful to keep from sliding."

This witness whose home is located in close proximity to the crash testified positively that he heard only one crash. Certainly this is substantial evidence from which the jury could have found that this was a simultaneous collision.

From the severity of the collision with appellant's truck as indicated by the physical facts as established by the testimony and photographs in the record, a jury could have found that appellant's truck contributed to causing the death of Mrs. Smith.

It is settled law that once a plaintiff has shown a defendant's negligence concurred with the negligence of another in producing an injury he is entitled to recover unless the defendant shows that the negligence of the other party would have produced the injury independently of his own negligence. *Oviatt* v. *Garretson,* 205 Ark. 792, 171 S. W. 2d 287; *Lydon* v. *Dean,* 222 Ark. 367, 260 S. W. 2d 465; 38 Am. Jur., Negligence, § 63, p. 715. In my view appellant completely failed to make such a showing.

Was there any substantial evidence from which reasonable men could possibly have found that appellant was negligent? The jury heard the testimony of appellant Johnny Hunt who admitted to making the 155-mile trip from Little Rock to Jonesboro while driving a huge transport truck on this rainy night of the accident in

less than four hours and after making business stops at Searcy and Newport, and after taking more than 30 minutes to eat a steak in Newport. The jury further heard the evidence developed at trial which showed that Johnny Hunt, driver of the Superior truck, gave a written and signed statement a few hours after the wreck to the manager of the Superior Forwarding Company terminal at Jonesboro and to the insurance adjustor for Superior which stated that the vehicle proceeding down the highway toward Hoxie in front of him was occupied by two persons and that the vehicle meeting them was a convertible.

Five days after the accident when he was in Little Rock, the evidence showed Hunt gave another written and signed statement, with the consent of his employer, to a representative for the Spurlock estate and within that statement again stated that the car he had been following was a Chevrolet hardtop and that the vehicle meeting him was a Chevrolet convertible.

Hunt testified at the trial he really didn't know which vehicle was in front of him and which vehicle he was meeting. In addition to this impeachment the jury was asked by appellants to believe that appellant could accurately describe the speed and control of an oncoming vehicle at a considerable distance when he couldn't testify on the witness stand as to which car he had been following. This is the same witness who after suffering comparatively slight injuries admittedly failed to check on the welfare of the occupants of the other vehicles, one of which apparently burned to death. It is true that Johnny Hunt was the only surviving eye witness to this collision but as stated above his testimony is disputed as a matter of law and from the verdict rendered by the jury it is evident that they chose not to believe him as a matter of fact, which of course they had a perfect right to do. On appeal this court in the majority opinion chooses to disagree with the jury and relies almost completely for its finding of no substanial evidence upon the testimony of Hunt.

What was the evidence as to the weather conditions? The witness John Newton White testified as set out above concerning the weather conditions both before and after the collision. Johnny Hunt testified that he noticed ice on the road immediately after he got out of his truck. Witness John W. Troutt, Jr., City Editor and photographer for the Jonesboro Evening Sun, testified that he arrived at the scene not later than 1:30 A.M., which was not more than 30 minutes after the wreck had occurred, and that as he was driving west from Jonesboro to the scene of the wreck he encountered ice at the town of Sedgwick on west to where the wreck occurred. He also testified that he slowed his speed down considerably after going west from Sedgwick. Witness Robert F. Warden testified that he arrived at the scene at about 1:10 A.M., which would have been not more than 15 minutes after the wreck, and that in going to the scene he traveled the highway on which the wreck occurred and that the highway was icy and very slick. Witness Charles White, a fireman from Walnut Ridge, testified that the roads were icy and very slick. Witness Alvin Taylor testified that he was the first motorist to arrive on the east side of the scene of the accident and that he arrived there some time between 12:00 and 1:00 A.M. and that when he got out of his car he noticed that there was ice on the highway. Appellant admitted he was driving his heavy tractor and trailer at a speed of 50 miles per hour. It is my view that reasonable minds could differ as to whether 50 miles per hour was an excessive speed for a big tractor and trailer to have been driven on an icy highway at night.

Appellant admitted that he was following the automobile in front of him at a speed of 50 miles an hour. He estimated the speed of the preceding automobile to be 40 miles per hour. He said he was following within 80 to 100 feet of the vehicle in front of him. Such a distance is barely more than the combined length of his tractor and trailer. His trailer alone was 40 feet in length. He admitted that he ordinarily would not follow another vehicle any closer than three to four hundred feet. However, he tried to justify the fact that he was within 80 to

100 feet of the vehicle in front of him by stating that he had overtaken the vehicle in front of him and started to pass but saw another automobile approaching from the opposite direction at a distance of one mile or more away. When he saw the approaching automobile, he discontinued his effort to pass. Although he realized that the approaching automobile was traveling at a terrifically high rate of speed when he first saw it a mile or more away, and, nevertheless, he remained within 80 to 100 feet behind the car in front of him. Even though he felt that three to four hundred feet was a safe distance for him to follow another vehicle, he did not adjust his speed so as to get a safe distance back, in spite of the fact that he knew he was going to meet a vehicle which he described as traveling at a terrifically excessive rate of speed. Once he abandoned his effort to pass, he could not escape the duty imposed upon him by Sec. 75-614 of the Arkansas Statutes Annotated, which provides that a driver of a motor vehicle shall not follow another closer than is reasonable and prudent, particularly in view of the fact that he had more than ample time to get a prudent distance back.

A reasonable and prudent distance for appellant Johnny Hunt to follow another vehicle would certainly be more than 80 to 100 feet and under the existing circumstances, a jury might well find that a prudent distance would be even more than the three to four hundred feet which he testified he ordinarily considered to be a safe distance for him to follow another vehicle.

There was further evidence relative to Hunt's driving, such as failure to swerve his vehicle and failure to apply brakes, from which a jury could have found that Hunt was negligent in failing to keep a proper lookout and failing to exercise ordinary care.

From the whole case it is my view that appellee need not have proved by direct evidence that Mrs. Smith's death was caused by the sole negligence of Johnny Hunt. I believe it is sufficient if the facts proved are of such a nature, and are so connected and related to each other, that the conclusion therefrom may be fairly inferred. In

the case of *Biddle* v. *Jacobs,* 116 Ark. 82, 172 S. W. 258, this court in ruling on the sufficiency of the evidence as to whether defendant's negligence was the proximate cause of the deceased's death, said:

"In actions for damages on account of negligence, plaintiff is bound to prove, not only the negligence, but that it was the cause of the damage. This causal connection must be proved by evidence as a fact, and not be left to mere speculation and conjecture. *The rule does not require, however, that there must be direct proof of the fact itself. This would often be impossible. It will be sufficient if the facts proved are of such a nature, and are so connected and related to each other that the conclusion therefrom may be fairly inferred.*" [Emphasis mine.]

For the reasons stated above, I respectfully dissent.