**Thomas QUINN and the First National Bank in Little Rock, Guardian of the Estate of Susan Quinn, a Minor, Appellants,**

v.

**UNITED STATES of America and J. T. Crumley, Appellees.**

No. 20492.

United States Court of Appeals, Eighth Circuit.

March 19, 1971.

William H. Sutton, Joe D. Bell, Smith, Williams, Friday & Bowen, Little Rock, Ark., for appellants.

W. H. Dillahunty, U. S. Atty., and Robert F. Fussell, Asst. U. S. Atty., for appellees.

Before MATTHES, Chief Judge, ROSS, Circuit Judge, and STEPHENSON, Chief District Judge.

MATTHES, Chief Judge.

This litigation emanates from a tragic event which occurred at approximately 7:00 a. m. on July 12, 1968. Susan Quinn, 15 years old at that time, was sleeping in a pickup truck which was stationed or parked within a public use area constructed and maintained by the United States, adjacent to Greers Ferry Lake in Van Buren County, Arkansas, when the truck was struck by a runaway converted school bus being operated by J. T. Crumley. Susan suffered serious and permanent injuries which are described in the opinion of the United States District Court, reported at 312 F.Supp. 999, 1007–1008 (E.D.Ark.1970).

Suit was filed in the United States District Court for the Eastern District of Arkansas against J. T. Crumley and the United States.[1]

The Honorable John E. Miller, Senior District Judge, after a bench trial, filed an exhaustive opinion, reported as stated above, in which he found: (a) Crumley was negligent in the operation of the motor vehicle which collided with the truck in which Susan was sleeping, and that his negligence was the proximate cause of the collision, 312 F.Supp. at 1003; (b) that the United States was negligent in failing to erect and maintain adequate signs warning the public of the conditions existing and inherent in the construction of the access road leading into the Fairfield Bay Marina on Greers Ferry Lake, 312 F.Supp. at 1003–1006; and (c) that the negligence of the United States was not a proximate cause of the collision of Crumley's vehicle and the pickup truck.

Judgment for a substantial amount was rendered in favor of the plaintiffs against Crumley. The complaint against the United States was dismissed.

Crumley did not appeal from the judgment against him. Neither did the

---

1. Recovery was sought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 et seq. Thomas Quinn, father of Susan, sued for the amount expended by him for medical care and treatment of his daughter. First National Bank in Little Rock, Susan's guardian, sought damages suffered by her as a result of the injuries.

United States appeal from the finding that it was negligent as delineated by the district court, and that question is not an issue on this appeal. Plaintiffs alone appealed from the judgment dismissing their complaint against the United States. They present two contentions of error. First, "that the court erred in finding that the Government's negligence in failing to erect proper traffic signs was not a proximate cause of the accident." Second, that the court "erred in failing to find that the Government's negligence in maintaining a public use or picnic area in an unsafe place was a proximate cause of the accident."[2]

Thus, it is manifest that the troublesome controversy between appellants and the United States which confronted the district court was focused upon the question whether the United States was guilty of actionable negligence, i. e., negligent conduct which was a proximate cause of the Crumley vehicle crashing into the truck occupied by Susan Quinn. Judge Miller, who was in deep sympathy with Susan's permanent physical disability, objectively analyzed the facts, in the main undisputed, and then by application of the controlling law reasoned and demonstrated, in effect, that Crumley's negligence was the sole cause of Susan's injuries, and that the Government's negligence was not a proximate cause. We are in full agreement with the district court's findings and conclusions and affirm.

Because able and conscientious counsel for appellants adamantly insist that tested by the controlling standards a reversal is compelled, we have elected to engage in a review of the applicable law and the extent of the scope of our review on appeal.

### I

It is settled and the parties agree that the law of Arkansas, as enunciated by the supreme court of that state, controls all substantive issues presented in a Federal Tort Claims case. 28 U.S.C. § 1346(b); United States v. Slone, 405 F. 2d 1033 (8th Cir. 1969); United States v. Farmer, 400 F.2d 107 (8th Cir. 1968).

### II

As early as 1898, the Supreme Court of Arkansas had occasion to address itself to the question of proximate cause and in doing so arrived at this conclusion:

"In determining whether an act of a defendant is the proximate cause of an injury, the rule is that the injury must be the natural and probable consequence of the act; such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act; the act must, in a natural and continuous sequence, *unbroken by any new cause, operate as an efficient cause of the injury. If a third person intervenes between the act of the defendant and the injury, and does a culpable act, for which he is legally responsible, which produces the injury, and without it the injury would not have occurred, and the act of the defendant furnished merely an occasion for the injury, but not an efficient cause, the defendant would not be liable; * * *."*
(Emphasis added)

Gage v. Harvey, 66 Ark. 68, 48 S.W. 898 (1898). The author of the article entitled "Torts—Proximate Cause—Intervening Force," appearing in 1 Arkansas Law Review at 152, quotes with approval from *Gage*. With slight variations in language, Arkansas has adhered to the definition of proximate cause as promulgated in *Gage*. In Collier v. Citizens

---

2. The parties are in disagreement as to whether or not Judge Miller found the Government was negligent in maintaining the use or picnic area in an unsafe place. We have difficulty in reading this finding into Judge Miller's opinion but whether or not he so found is immaterial in view of the ultimate result he reached on the issue of proximate cause.

Coach Company, 231 Ark. 489, 330 S.W. 2d 74, 76 (1959), the court stated:

"Black's Law Dictionary defines 'proximate cause' as:

'That which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.' "

In Ben M. Hogan & Co. v. Krug, 234 Ark. 280, 351 S.W.2d 451, 453–454 (1961), the Arkansas court reverted to 1 Arkansas Law Review at 152, and to the pronouncement of the court in *Gage*, supra. In the later case of Bull v. Manning, 245 Ark. 552, 433 S.W.2d 145, 148 (1968), the Arkansas court in addressing itself to the meaning of proximate cause sited with approval Collier v. Citizens Coach Company, supra.

### III

The Supreme Court of Arkansas has also held that ordinarily the proximate cause issue presents a fact question.

"The general rule is that what is the proximate cause of an injury is a question for the jury. It is to be determined as a fact in view of the circumstances attending it. It is offtime difficult of application, but the question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? So, it is generally held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable sequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." (Citing numerous cases)

**3.** Reference to Prosser, Law of Torts, 3d ed. discloses that Professor Prosser deals with "causation in fact" in Chapter 7, page 240, et seq. (cited in Hill v. Maxwell, supra), and with proximate cause in Chapter 9, page 282, et seq. Prosser espouses that there is a difference between causation in fact and proximate cause and

Booth & Flynn v. Price, 183 Ark. 975, 39 S.W.2d 717, 720 (1931). This rule has been sanctioned in many jurisdictions, see 38 Am.Jur. Negligence § 351 (1941), and cases cited under note 19, page 1057, and is recognized by counsel for appellants. They vigorously argue, however, that the rule is not applicable here for the reason that under all of the facts and circumstances, the negligence of the United States was, as a matter of law, a proximate cause of the accident. For reasons stated below, we find ourselves unable to agree with appellants' contention.

### IV

It is also settled in Arkansas that the burden of proof is upon the plaintiff to establish not only negligence, but also that such negligence was a proximate cause of the injury to plaintiff. Kapp v. Bob Sullivan Chevrolet Co., 234 Ark. 395, 353 S.W.2d 5, 18 (1962); Superior Forwarding Co. v. Garner, 236 Ark. 340, 366 S.W.2d 290, 296 (1963).

In the later case of Hill v. Maxwell, 448 S.W.2d 9, 10–11 (Ark.1969), the court speaks in terms of causation rather than proximate cause. The *Hill* court cited Prosser, Law of Torts, Section 41 (3d ed. 1964), in concluding that the burden of proof is upon the plaintiff to show *causation* by more than speculation and conjecture.[3]

### V

Finally, review by a court of appeals as to findings of fact by the district court in Federal Tort Claims cases is limited to the clearly erroneous standard. Fed.R.Civ.P. 52; Williams v. United States, 405 F.2d 234 (5th Cir. 1968); Ashley v. United States, 326 F.2d 499 (8th Cir. 1964).

asserts that the courts have erroneously used the terms interchangeably. Discussion of the difference between causation and proximate cause according to the views of Professor Prosser is wholly unnecessary to the disposition of this case. Under either, Judge Miller clearly was correct in exonerating the United States.

Having considered the relevant legal guidelines, we engage in a summary of the evidence which we view as warranting, if not compelling, the district court's decision.

The Fairfield Bay Boat Dock, frequently referred to as the marina, is and was at all times here material, located on Greers Ferry Lake, a large body of water in Northeast Arkansas. The United States constructed a public road known as Fairfield Bay Road from State Highway No. 330 to the marina and the recreational area in the vicinity of the marina. Near the eastern section of the road, approaching the marina area, the road declines rather sharply. From the crest of the hill the road grade is 13.25% for approximately 800 feet, and then the grade is reduced to 11.9% for approximately 500 feet. Near the bottom of the hill, the road curves to the left and into the marina area. A part of the development to the right of the road as one approaches the marina, and near the curve, had been set apart for use by the public. The pickup truck occupied by Susan Quinn was in that area.

When the water level in the lake was above normal and in flood stage, as it was on July 12, and had been since sometime in May, 1968, the road at the bottom of the hill would become inundated and flooded, thereby making the road impassible.

A barricade extended across the road about 700 to 750 feet from the crest of the hill. An appropriate sign, designed to direct motorists to use an intersecting road which also led to the marina, was attached to the barricade. Thus, even though what may appropriately be termed the direct or main access road to the marina was rendered impassible by high water, the public was enabled to gain access to recreational areas and the marina.

Having outlined the physical conditions of the access roads, we direct our attention to J. T. Crumley. He had lived in the area since 1963, and had been in the business of servicing marinas on the lake for some time. To enable him to deliver fishing tackle and related supplies directly to the marinas, Crumley had converted a 1960 GMC school bus into a vehicle designed to transport his wares. Crumley had been servicing the Fairfield Bay Boat Dock during the summer of 1968. Specifically, he had sold and delivered merchandise to that dock on May 4, May 17, May 31, June 14 and June 21, all in 1968. According to his own testimony, he had travelled over the access road many times and was thoroughly familiar with the grades, contours and general condition of the road. More importantly, Crumley knew when he started on the fateful trip on the morning of July 12, that the main road was flooded at the location above described. Having such knowledge, Crumley intended to turn into the intersecting road, and thereby reach the marina. He had in the past used the intersecting road.

For at least a week immediately before the eventful morning, Crumley had been operating his converted school bus with defective brakes. He was fully aware that the brake cylinder on the right rear wheel was completely inoperative, because a filling station operator had, at Crumley's direction, "pinched" off the tube carrying brake fluid to that cylinder. He intended to have the brakes repaired, but neglected to do so.

Operating the bus, heavily loaded with supplies, with defective brakes and a "missing" motor, Crumley approached the crest of the hill at a speed of 10 to 15 miles per hour, well within the posted maximum speed of twenty miles per hour. He "geared down" once and intended to shift to another gear and thereby control the speed of the vehicle, but events happened so swiftly that he was unable to negotiate the second shifting of gears. As he began the descent, he applied his brake pedal twice. Upon the initial application of the brake pedal, he detected that something was amiss. The second application immediately after the first proved futile, and he then realized he had absolutely no braking

power. The result was inevitable. The bus proceeded down the hill at such a rapid speed that Crumley lost control over it. In fact, for some reason which he could not explain, he lapsed into unconsciousness and had no recollection of what transpired from the time of the second application of the brakes. According to his testimony, however, he did see the barricade across the road. There were no eye witnesses to the runaway vehicle, but the physical evidence, as pieced together, shows that the bus struck a part of the barricade, plunged down the roadway, left it near the picnic area and crashed into the pickup truck.

We believe the foregoing recital demonstrates, without elaborate discussion, that neither the failure of the United States to erect and maintain additional warning signs before reaching the crest of the hill, nor the maintaining of the picnic or recreational area near the access road, as found by the district court, was a proximate cause of the Crumley bus becoming an instrumentality of death and destruction. If the road had been studded with warning signs before reaching the crest of the hill, the result would have been the same. Crumley did not need any warning to apprise him of the dangers inherent in travelling over the road. He was cognizant of the grade of the hill, of the flooded condition of the road at its eastern section, of the intersecting road, of the barricade, and of the location of the picnic area. He attempted to exercise caution as he approached the crest of the hill. His speed had been reduced, and he would have made a safe journey as he had on many prior occasions but for his own gross negligence in operating a heavily loaded vehicle with actual knowledge of the defective brakes.

This case fits the pronouncement of the early Arkansas court in Gage v. Harvey, quoted above. Here, if ever, the injury was not the natural and probable consequence of the act or omission of the United States. But for the intervening act of a third party, Crumley, for which he alone is legally responsible, the unfortunate event would not have occurred.

Based upon our careful consideration of the entire evidence, we are not left with the definite and firm conviction that a mistake was committed by the district court in finding for the United States. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Affirmed.