GLIDEWELL, ADMINISTRATOR *v.* ARKHOLA SAND &
GRAVEL COMPANY.

4-8402                                            208 S. W. 2d 4

Opinion delivered February 2, 1948.

*Hardin, Barton & Shaw,* for appellant.

*Daily & Woods,* for appellee.

HOLT, J. Appellant, as administrator of the estate of his son, Dan Glidewell, deceased, sued appellee, Arkhola Sand & Gravel Company, an Arkansas corporation, to recover damages for the benefit of the widow and next of kin of the deceased, who had been found dead on the premises of the company in Van Buren at about 10 o'clock on the night of February 7, 1946.

Specific acts of negligence of the company were alleged in the complaint of appellant to have caused the death of Glidewell. Appellee's answer was a general denial and further pleaded, as a bar to recovery, the contributory negligence and assumption of risk of Glidewell, the deceased.

Upon a trial and at the close of all of appellant's testimony, the court, on appellee's motion, directed a verdict in favor of appellees. This appeal followed.

The rule is well settled that in testing the sufficiency of the evidence where there has been a directed verdict, as here, if there is any substantial evidence, it is the duty of the trial court to submit the question to the jury, and in making this test, the evidence and all reasonable inferences deducible therefrom must be viewed in the light most favorable to the party against whom the verdict was directed. *Collett* v. *Loews,* 203 Ark. 756, 158 S. W. 2d 658.

Appellant's evidence showed that appellee operated a sand and gravel plant on the banks of the Arkansas River at Van Buren, from which it sold sand by the truck load to truckers who called for it. Appellee pumped sand from the river bed and after it was washed and screened, it was carried by a conveyor belt and dumped in a pile over and upon a concrete tunnel, the tunnel being used to facilitate the loading of open bed trucks. This tunnel is inside about 8½ feet wide, 10 feet high, and about 100 feet long, running east and west. It was enclosed except at the east end which is open to admit entrance of trucks. This sand pile was about ½ acre in

area at the bottom and approximately 40 feet in height. The tunnel had four or five openings in its roof, approximately 18 inches square, each closed with an iron scuttle having a lever handle. In loading sand, the truck driver backed his truck under the tunnel under one of these openings and when the scuttle was pulled down and the hole opened, the sand would flow into the truck by gravity and fill the truck. The flow of sand was stopped when the loading was completed by pushing up on the lever handle and closing the scuttle. The sand was called for and sold both day and night, and drivers frequently loaded their own trucks without assistance. At night, after the workmen had gone, the premises were in charge of the night watchman who had a small office near a roadway that led onto the premises and down to the mouth of the tunnel. After work hours when a driver brought his truck for a load of sand, it was the custom to go by the night watchman's office and if the watchman were there to pay for the load and then go on down and secure his load. The trucker was sometimes accompanied by the night watchman and on occasions, the trucker went alone and loaded his truck without assistance. The tunnel and sand pile were unlighted at night.

The evidence further showed that the deceased was 31 years of age, healthy, strong, a hard worker, and with a life expectancy of 34 years. He owned his own truck and had been in the trucking business for about eight years, hauling for those who procured his services, and was earning about $250 per month with which he supported a wife and two children. At about 3 o'clock p. m., February 7, 1946, he was engaged by a party at Lavaca, Arkansas, to haul some plaster to Fort Smith and then get a load of sand at appellee's plant in Van Buren to be hauled back to Lavaca.

At about 10 o'clock p. m. of the same day, two of appellant's witnesses, Lewis and Christy, arrived in a truck at appellee's plant to procure a load of sand. They were accompanied to the tunnel by the night watchman and there they found the truck of the deceased, Glidewell, backed into the tunnel in position to load sand. The truck was fully loaded and unattended. The night watch-

man proceeded to drive Glidewell's truck out of the tunnel and the Lewis and Christy truck was backed in. While Lewis and Christy were preparing to load, the night watchman reported that he had found a hat on the sand pile. He immediately called officers who, together with the night watchman, Lewis and Christy, went up on the pile of sand, and after digging above the loading shoot over the place where Glidewell's truck had been found, they discovered Glidewell's body buried in the sand with his feet in the shoot. He was in a crouched position and dead. He was in the bottom of an inverted cone of sand, the sides which sloped up to a maximum of about 15 feet in height.

Some five other witnesses testified on behalf of appellant that at times they had procured sand from the gravel company (appellee) and had loaded their trucks at this tunnel and at times when the sand was wet, it would sometimes stick and fail to flow freely through the scuttles into the trucks. When this occurred, it was necessary to dislodge the sand to cause it to flow freely. These witnesses were further permitted to testify, over the objections of appellee, that there was a custom of the drivers to go on top of the tunnel on occasions when the sand would not flow freely, to dislodge it by shovelling or prodding with an iron bar or stick. This testimony was admitted on condition that it be connected up with the deceased by some substantial evidence showing that deceased had knowledge of such custom.

The sand pile in which the deceased's body was found was described by appellant's witnesses as an "ordinary river sand no different than any other sand;" "just a loose pile of sand;" "the same kind that's in any sand pile that comes out of the river;" that it would slide and shift and change position, and stick when it got wet, like any other sand.

There were no eye witnesses to the occurrence of the death of Glidewell.

The sand pile was shifting and changing from time to time, sometimes low and sometimes big, and would change as sand was taken out and more sand added.

The deceased at the time of his unfortunate death was an invitee on appellee's premises, and appellee owed him the duty to use ordinary care to keep its premises in a reasonably safe condition to prevent injuring him.

The negligent acts upon which appellant based his complaint were: (1) that appellee negligently maintained and operated its place of business, failed to give haulers, and Dan Glidewell in particular, proper warning and instructions in loading the sand and the dangers incident thereto; (2) that appellee was negligent in failing to maintain sufficient help to Dan Glidewell in loading the sand when appellee knew or should have known, that an inexperienced person could not load same; (3) that appellee was negligent in that it failed to provide proper loading stations and in allowing the pile of sand to become wet, causing it to clog easily "and fail to go into said chutes;" and (4) that appellee negligently failed to clean out said loading chute or tunnel and allow sand to accumulate therein "so that it was impossible for the said Dan Glidewell to enter into said tunnel or chute for the purpose of loading said vehicle."

On the record presented, we have reached the conclusion that the trial court correctly directed a verdict in favor of appellee.

As we view the testimony, appellant's whole case is based on inferences, speculation, and conjecture. We find no substantial testimony to support the allegations of negligence in this case.

It is undisputed that the deceased, Dan Glidewell, left Lavaca at about 3 o'clock on the afternoon of February 7th to get a load of sand at appellee's plant at Van Buren and haul it back to Lavaca. There is no evidence in this record that he was seen again until his body was found at about 10 o'clock that night in the sand pile of appellee.

Sunset on February 7, 1946, occurred at 5:52 p. m. (*Missouri Pacific Railroad Company* v. *Magness*, 206 Ark. 1081, 178 S. W. 2d 493), and that more than three

hours of daylight therefore remained after Glidewell left Lavaca within which to complete his mission. The distance from Lavaca to Van Buren is approximately 25 miles over a paved road. The record is silent as to the time Glidewell reached the sand plant. No one appears to have seen him.

The record also fails to disclose whether the deceased loaded his truck himself, whether he had assistance, whether the sand stuck or failed to flow freely into the truck, whether it was daylight or dark, whether Glidewell climbed on the pile of sand over the tunnel to dislodge it and was caught in a sand slide, while engaged in dislodging the sand and thus buried and killed, whether the deceased was inexperienced in loading the sand, or whether out of curiosity Glidewell might have climbed on the pile of sand, stumbled into the hole, fell by reason of dizziness or heart failure, the evidence fails to disclose.

The burden rested on appellant, in order to make a jury question, to adduce some substantial testimony from which the jury might have found some act of negligence on the part of appellee, alleged in appellant's complaint.

This, appellant might establish, either by direct or circumstantial testimony. He could not rely upon inferences, based on conjecture or speculation in order to establish proof of negligence. "What is meant is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." 20 Am. Jur., § 165, p. 169.

In *Fort Smith Gas Company* v. *Blankenship*, 193 Ark. 718, 102 S. W. 2d 75, we said: "The indulgence of inferences will not supply a non-existent fact. Inferences to support a verdict arise out of facts established by evidence. Other inferences are purely speculative, or maybe guesswork or conjecture. This method of dealing with the rights of parties has been condemned by many decisions. (Citing cases.)"

And in *Moran* v. *State*, 179 Ark. 3, 13 S. W. 2d 828, it was said: "It is not allowable, under the rules of

evidence, to draw one inference from another, or to indulge presumption upon presumption to establish a fact. Reasonable inferences may be drawn from positive or circumstantial evidence, but to allow inferences to be drawn from other inferences, or presumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture.''

The above case, *Ft. Smith Gas Company* v. *Blankenship,* and *Missouri Pacific Railroad Company, et al.,* v. *Ross, Administrator,* 194 Ark. 877, 109 S. W. 2d 1246, were cited in 32 C. J. S., ''Evidence,'' § 1044, p. 1129, in support of the following text: ''An inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess.''

In the Ross case, in which there were no eye witnesses to the accident, (as here) and circumstantial evidence was relied upon rather than direct testimony, and the question was whether there was any substantial evidence to be submitted to the jury, the deceased's body having been found on the side of the railroad track with evidence of physical injury, we said: ''We are asked to say (1) that when the body was found as related by witnesses, the conclusion necessarily followed that Ross was killed by a train; and (2) that attending circumstances were sufficient to satisfy the rule that every verdict must be sustained by some substantial evidence, either direct or circumstantial. If this be conceded, still the question remains unanswered. Upon what testimony did the jury predicate a finding that the statutory duty of care was disregarded? . . . Conjecture and speculation, however plausible, cannot be permitted to supply the place of proof,'' and in *Turner* v. *Hot Springs Street Railway Company,* 189 Ark. 894, 75 S. W. 2d 675, we find this language:

''The trial court was correct in directing a verdict for appellee, because the testimony adduced by appellant was not sufficient to show that the injuries received were proximately due to any negligence of appellee. No witness testified that appellant's fall was proximately due to the small pieces of snow and ice afterwards seen in

the vestibule of the street car. It is true, the jury might have guessed or speculated that her fall was caused by stepping upon the small pieces of ice and packed snow in the vestibule of the street car, but, on the other hand, it was equally as probable that her fall was caused by packed snow or ice which had accumulated on her own shoes. The point is, juries are not permitted to guess or speculate as to the proximate cause of an alleged injury, the burden resting upon appellant to show by a preponderance of the evidence that her injuries were caused by some negligent act or omission of appellee. . . . In the recent case of *National Life & Accident Ins. Co.* v. *Hampton,* 189 Ark. 377, 72 S. W. 2d 543, we stated the applicable rule as follows: 'It is the well-settled doctrine in this State that a jury's verdict can not be predicated upon conjecture and speculation,' and continuing we adopted the rule as announced by the Supreme Court of the United States in *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, as follows: 'It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion.' ''

So here, as we have indicated, unless we build inference on inference, or delve into speculation or conjecture (which we cannot do), there is no substantial evidence of negligence in this record, as we view it.

No negligence could be inferred from appellee's maintaining a large pile of ordinary sand on its premises and that it would be necessary for appellee to warn Dan Glidewell of any danger incident thereto. We know of no rule of law that would make a pile of sand, as here, *prima facie* dangerous. That piled sand when wet will

stick, and when dry and piled over an opening and released, will pour by gravity through an opening, is generally known to everyone. Appellee had no superior knowledge to that of the deceased in this regard. Therefore, there was no duty resting upon appellee to warn Dan Glidewell. Appellant, however, earnestly argues that the trial court erred in refusing to permit him to show, by witnesses, that it was the custom of other drivers who came to appellee's plant for sand, to climb upon the tunnel in order to dislodge the sand when, and if, it became stuck or clogged in the chutes. It appears that the court disregarded this offered testimony of appellant on the ground that appellant had failed to adduce any testimony that the deceased knew of, or ever participated in, such a custom. The trial court was correct in disregarding this testimony, for we find no evidence that deceased knew of or ever observed such custom.

All the witnesses who testified as to the purported custom also testified that they had never seen the deceased on appellee's premises prior to his death, and that they knew nothing as to what he saw or did while there.

In the chapter on "Customs and Usages," 25 C. J. S., § 9, pp. 84 and 85, the text writer says: "A party relying on a usage must himself have had knowledge of it at the time the transaction was entered into; . . . A party to a transaction cannot set up a usage of the other party, of which the party setting it up was ignorant at the time of the transaction, . . .," and in *Wall* v. *Mutual Life Insurance Company of New York,* 217 Ia. 1106, 253 N. W. 46, the Supreme Court of Iowa stated the rule: "It is another well-settled principle that where a claim is made of particular custom and usage the same must be known by the parties affected by it or it will not be binding. Or, to say it another way, where one seeks to advantage himself of a particular custom or usage, the same must have been known to him at the time he acted and he must have acted and relied thereon."

The Supreme Court of South Carolina in *J. B. Colt* v. *Robinson,* 137 S. C. 224, 135 S. E. 312, said: "As to

the first ground of error: The testimony complained of, and which was admitted by the circuit judge over the objection of the plaintiff, had to do with alleged transactions between the plaintiffs and persons other than the defendant in the present case, with reference to the plaintiff's methods of dealing with such persons regarding the sale of lighting plants similar to that sold to the defendant, and to statements alleged to have been made to these persons by agents of the plaintiff during such negotiations. No connection or relationship between these transactions and the transaction alleged to have taken place between the plaintiff and the defendant was shown, and this testimony was clearly inadmissible.''

We therefore conclude, after consideration of all the testimony in this case, that there was no substantial evidence to take the case to the jury, and accordingly, the judgment must be, and is affirmed.