MISSOURI PACIFIC RAILROAD COMPANY ET AL
*v.* JOHN C. McDANIEL ET AL

5-5707                                         483 S.W. 2d 569

Substitute opinion on rehearing delivered May 15,
1972

*William J. Smith* and *Boyce R. Love,* for appellants.

*Williams & Gardner,* for appellees.

CONLEY BYRD, Justice. These personal injury actions grow out of a railroad crossing collision at Blackville, Arkansas. Reverend A. L. Perkins, age 76, a resident of Little Rock, was the pastor of a small church. He drove his car across the tracks in front of a Missouri Pacific Railroad Company train operated by C. Stover, the engineer and A. D. Harper, the fireman. Sam McDaniel, age 74, and Walker Templeton, age 86, were passengers in Reverend Perkins' automobile. The two passengers were killed in the collision. Because of the injuries received, Reverend Perkins had no recollection of the accident, of having seen the train, or what happened immediately afterwards. The three actions by Reverend Perkins and Ada Perkins, his wife, by John C. McDaniel as Administrator of the estate of Samuel McDaniel, and by Adell Templeton, administratrix of the estate of Walker S. Templeton, deceased, were consolidated for trial. The only issue of negligence submitted to the jury was whether the whistle and bell had been properly sounded. The jury returned verdicts of $10,000 for Reverend Perkins; $25,000 for the widow of Walker Templeton and $5,000 each for the ten Templeton children; and $5,000 each for the eleven children of Sam McDaniel. Funeral expenses were also allowed. For reversal of the judgments, appellants, the Missouri Pacific Railroad Company, A. D. Harper and C. Stover, contend:

"I. The trial court was in error in permitting the attorneys for the plaintiffs to elicit testimony from various witnesses that they were in position to have heard the whistle or the bell if sounded.

II. It was error to give the jury verdict forms which did not permit separate findings for the three separate defendants.

III. The trial court should have granted a mistrial when attorney for the plaintiffs in closing argument asked the jurors if they would take $15,000.00 for their fathers or $75,000.00 for their husbands.

IV. The court erred in striking from the record the testimony of Mrs. Stella Swaim that there had been no accidents at the crossing in 35 years.

V. The court should have permitted counsel for the defendants to ask the driver what he should do as he approaches a railroad crossing.

VI. The verdicts are excessive."

POINT I. The trial court permitted a number of witnesses, some of whom were as much as a quarter of a mile from the scene, to testify that they did not hear the train whistle and that if the whistle had been blown, they could have heard the whistle. One such witness was Cloudy Knight Williams. He testified that he heard the collision, that no whistle was blown and if it had been, he could have heard it.

As pointed out in *Fort Smith & Western Railway Company v. Messek,* 96 Ark. 243, 131 S.W. 686, 131 S.W. 966 (1910), such evidence is based upon what may be called negative knowledge. Other courts in admitting the statement that the witness could have heard the whistle if it had been blown have done so on the premise that is is "knowledge at short hand"—*i.e.,* it obviates the necessity of a great many other questions. See *Baltimore, C. & A. Ry. Co. v. Turner,* 152 Md. 216, 136 A. 609 (1927), and *Chicago & A. R. Co. v. Dillon,* 123 Ill. 570, 15 N.E. 181 (1888). Since the evidence here shows that the whistle board for the crossing was 1592 feet from the crossing, we cannot say that the trial court abused his discretion in admitting such evidence.

POINT II. The record shows that appellants requested that the issues be submitted to the jury on interrogatories and that appellees wanted the issues submitted on a general verdict. When the trial court decided to submit the matter to the jury upon general verdict form, appellants were requested to submit verdict forms but refused to do so. Under the circumstances, we are at a loss to understand why they are now entitled to complain of the forms of verdict submitted.

POINT III: During closing argument counsel for appellees asked the jury how many of them would take $12,000 or $15,000 for their father's life or how many of

them would take $75,000 for their husband or wife. At this point the record shows the following to have occurred:

> "MR. LOVE: Your Honor, I want to object to that argument and ask for a mistrial on the basis that he is putting a question to the jury of what they might take for their husband or their father. It's highly prejudicial and not in any way—
>
> THE COURT: Ladies and gentlemen of the jury, your motion for a mistrial will be denied. That portion of the argument dealing with what would you take, as the Court has explained to you before, opening statements and remarks of attorneys during the trial and closing arguments of the attorneys is not evidence, but is only made to help you to consider this particular law suit. Go ahead."

We have consistently held such arguments to be improper, *Lin Mfg. Co. of Ark.* v. *Coursen*, 246 Ark. 5, 436 S.W. 2d 472 (1969). In *Kansas City So. Ry. Co.* v. *Murphy*, 74 Ark. 256, 85 S.W. 428 (1905), the law applicable to the subject was stated in this language:

> "When the ruling of the court is presented to the appellate court in proper manner, then it is the duty of the appellate court to look to the remarks, and weigh their probable effect upon the issues; then to the action of the trial court in dealing with them; and if the trial court has not properly eliminated their sinister effect, and they seem to have created prejudice, and likely produced a verdict not otherwise obtainable, then the appellate court should reverse. However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that discretion is not an arbitrary one, but that sound judicial discretion the exercise of which is a matter of review."

Appellants here only contend that the trial court should have granted them a mistrial. They do not com-

plain of the trial court's admonition to the jury. On the record made, we cannot say that the trial court abused its discretion in refusing a mistrial.

POINT IV: Mrs. Stella Swaim testified that the accident in question was the first accident in 35 years. Upon motion the trial court struck the testimony. No error was committed. Appellants had not laid the proper foundation for the testimony by showing that the conditions at the crossing had remained substantially the same for the 35 year period. Furthermore, the issues having to do with a dangerous crossing were withdrawn.

POINT V: Reverend Perkins testified that he had no recollection of anything that occurred on the day of the collision from the time he saw the tracks until he was talked to in the hospital. On cross-examination, he testified that he had crossed the crossing over a hundred times but he had never stopped for a train at the crossing. Thereafter the following occurred:

"Q. Reverend Perkins, what is a motorist required to do when he approaches the railroad crossing?

"A. He is supposed to—

"MR. GORDON:
Your Honor, I believe the law sets that out.

"THE COURT:
Sustained.

"Q. As I understand it, you don't have any recollection of seeing or hearing a train, and you don't recall anything after seeing that first track, so you really can't tell us whether you looked to the right or left, can you?

"A. I know nothing except I saw that crossing, and the next thing I saw they were talking to me in the hospital."

Appellees contend that appellants did not properly comply with Ark. Stat. Ann. § 27-1762 (Repl. 1962), in that they neither made an objection to the court's ruling nor made known to the court the action they desired the court to take. Ark. Stat. Ann. § 27-1762 provides:

"Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

The foregoing statute is copied from Federal Civil Procedure Rule 46. The federal courts in interpreting that rule have held that the objection must be specific enough to inform the trial court of the point urged by the objector and to show the opposite party the point of the objection, so that he may have an opportunity to obviate the error, if possible. See Barron & Holtzoff, Federal Practice and Procedure §1021 and 88 CJS *Trial* §124. In treating Rule 46, in *Fort Worth & Denver Railway Company* v. *Roach,* 219 F. 2d 351 (5th Cir. 1955) it was said:

"The first specification of error relates to the following ruling of the trial judge: 'I will sustain the objection, gentlemen of the jury, to all of the testimony of this witness except formal matters like his training as a doctor and his experience and his interpretation of the X-rays that were identified by Dr. Van Sweringen. That part of the rest of it will be stricken.' Immediately following this pronouncement and in language which is clearly indicative of assent counsel for the defendant said: 'Very well, your Honor.' This being the state of the record it is apparent that no proper objection was taken to the ruling of the court and under Fed. Rules Civ. Proc., Rule 46, 28 U.S.C.A. the court's action may not be assigned as

error on this appeal. We therefore overrule this assignment without inquiring into the question it seeks to raise."

In *Hammond* v. *Peden,* 224 Ark. 1053, 278 S.W. 2d 96 (1955), we said:

"4. Next it is contended that the court erred in refusing to let the wife, Nellie Peden, testify concerning matters that took place or occured prior to August 3, 1954, when the last divorce was obtained. It is not necessary to consider the admissibility of this character of testimony because appellant made no objection to the court's ruling in excluding it. In proceeding under Act 555 of 1953 it is required under §21 of said Act that the party object to the ruling of the court and make known to the court the action which he desires the court to take or he must state his objections to the action of the court and his grounds therefor. As stated this was not done in this instance by appellant."

Consequently we conclude that appellants for lack of a proper objection are not in a position to complain of the trial court's action with reference to the inquiry made.

POINT VI: Appellants contend that the mental anguish awards of $25,000 for Mrs. Templeton and $5,000 for each of the Templeton children are excessive. They make the same contention as to the $5,000 awards for each of the McDaniel children.

The record shows that Mr. Templeton was 86 at the time of his death. He was still supporting his wife to whom he had been married for 55 years. The wife testified that she missed going to social affairs and church affairs with her husband. He worked a truck patch, the garden, mowed the lawn and hoed some beans for their son. The widow had "nervous breakdowns" and had trouble sleeping at night. Under the circumstances, we cannot say that $25,000 for her mental anguish is exces-

sive. After 55 years of married life, every horizon and every social stratum would be expected to hold some empty anguish.

The Templeton children fit into a different category. Their ages range from 29 to 51 and of the ten children, nine lived out of the state. When the fact that Mr. Templeton was 86 at the time of his death is considered together with the infrequency of the children's visits, a majority of the court has concluded that anything in excess of $500 for the mental anguish of each adult child is excessive.

Sam McDaniel was 74 at the time of his death. He is survived by eleven children, all adults. The only child living with him was Ladelle McDaniel, age 37, a construction worker. Nine of the children testified at the trial. Of the two who did not appear, one was described as too sick and the other financially unable—having lost his job while attending the funeral. Upon the record made, a majority of the court has concluded that any award for mental anguish in excess of $500 for each child is excessive.

The judgment will be affirmed if within seventeen calendar days a remittitur is entered as indicated. Otherwise the specified judgments will be reversed and the causes remanded for a new trial.

FOGLEMAN, J., dissents to remittitur.

JOHN A. FOGLEMAN Justice. I do not agree with the remittitur on the judgments for mental anguish. I do not know the basis for it. It should not be based upon lack of evidence. I do not believe that it is based upon the ages of the survivors.

Whatever vices may be inherent in the allowance of recovery for mental anguish cannot be cured by judicial establishment of arbitrary ceilings upon judgments for this element of damages. I feel that jury verdicts awarding

such damages should be subjected only to the same review on appeal as verdicts for other elements of damage. I cannot, in good conscience, agree that the evidence to support the awards made is not substantial, at least as to some of the children.

As to Ralph Templeton, 32-year-old son of Walker Templeton, who had lived in Chicago since 1955, there was evidence that he was very close to his father, saw him three or four times a year, wrote and called him at intervals and that after the death this son had nightmares, was unable to sleep and to carry out his normal functions of family life and work.

Other such evidence was, in brief:

Aloria Jennings, 37, a Chicago resident, had a close relationship with her father, visited him on every annual vacation, wrote him and sent birthday and father's day cards. When told of his death, she became hysterical and started screaming. Subsequently, she has been unable to sleep without medication, which has been prescribed by her doctor.

Wilza Rene Ponds, a 29-year-old Chicago daughter, was very close to her father and stayed in touch with him at all times. Since his death, she is unable to sleep without taking a pill every night before she goes to bed, has lost her appetite and is unable to concentrate on the normal affairs of her daily life.

Ruth Pride, a 51-year-old Chicago daughter, saw her father one to three times per year, communicated with him and has had difficulty eating and sleeping since his death.

Wilbur Ray Templeton, a 35-year-old Chicago son, saw his father three to four times annually, and talked with him by phone or wrote him twice per week. Since the father's death, this son says that he has lost his appetite, is nervous and has nightmares at night.

When Mrs. Viola Hensley, a 42-year-old Chicago resident, was told of her father's death, she was unable to speak for 1½ or 2 hours. She is still under a doctor's care.

Walker Templeton, a 48-year-old son, lived in the same community with his parents, saw them daily and farmed with his father. He was only one-fourth mile from the scene of the accident. When he arrived there he found his mother screaming and saw his father lying on the ground across the railroad track. He still has sleepless nights.

Mrs. Louise Wesley, 39, of Coffeeville, Kansas, has developed high blood pressure and a heart condition since her father's death.

Mrs. Rose Bell Mason, 30, of Wichita, Kansas, was very close to her father. Since his death she takes pills twice daily for nervousness.

Mrs. Dorothy Jones, 43, of Chicago, said she was quite close to her father and wrote him twice a week. She is unable to sleep and has required the services of a doctor.

It seems to me that the evidence shows that there was more than normal grief more clearly than it did in *St. Louis Southwestern Railway Company* v. *Farrell, Admrx.*, 242 Ark. 757, 416 S.W. 2d 334. It is true that a $70,000 jury verdict was reduced to $50,000 in that case, but it seems evident that even a substantial part of the smaller judgment was attributable to mental anguish of a 50-year-old son, a 47-year-old son and a 44-year-old daughter.

It seems to me that the jury was in a better position to determine the extent of the mental anguish of these children than this court is.

I would affirm the judgment.