## Nathaniel DANIELS et al *v.* CHICAGO, ROCK ISLAND and PACIFIC RAILROAD et al

74-74                                    511 S.W. 2d 175

### Opinion delivered July 8, 1974

*Carpenter, Finch & Dishongh,* for appellants.

*Wright, Lindsey & Jennings,* for appellees.

CARLETON HARRIS, Chief Justice. On November 4, 1969, Verneda, Annie, and Fred Daniels, Jr., were killed at a railroad crossing at Wheatley when the half-ton pickup truck driven by Fred, was struck by an engine pulling only a caboose. The Daniels were traveling north on Highway 70 and the train was traveling west. Decedents were survived by their respective spouses and children, and suit was instituted by Nathaniel Daniels, Administrator of the estate of Verneda,

and the Administrators of the estates of the other two decedents, appellants herein, against Chicago, Rock Island and Pacific Railroad, and the engineer operating the engine. The complaint alleged negligence, *inter alia,* failure to keep a proper lookout at the crossing, failure to ring a bell or blow a whistle in the manner prescribed by law, and negligence in failing to clear the right-of-way of visual obstructions. The several administrators prayed judgment against the railroad for damages and costs. The railroad company and engineer, appellees herein, answered, denying all allegations of negligence and subsequently, the case proceeded to trial. At the conclusion of appellants' testimony, appellees moved for a directed verdict, which was granted and from the judgment so entered, appellants bring this appeal.

Of course, it might be stated at the outset that in "dealing with a directed verdict, we must take that view of the evidence which is most favorable to the party against whom the verdict is directed, and, if there is any substantial evidence tending to establish an issue in his favor, it is error for the court to take the case from the jury. In testing whether there is substantial evidence, the testimony and all reasonable inferences deducible therefrom must be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute, but is in such state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict." *Page v. Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S.W. 2d 307.

In contending for a reversal, appellants first assert that the trial court erred in directing the verdict because the testimony of two witnesses presented a jury question, and the case should accordingly have been submitted to the jury.

The testimony mentioned referred to the question of whether the train whistle was blown or the bell on the engine rung in compliance with the statute.[1] Chester Watson, a resident of Wheatley, testified that he lived about 800 feet from the crossing; that he was at his home on the date and hour of the collision, and that, in fact, he heard the impact between

---

[1]See Ark. Stat. Ann. § 73-716 (Repl. 1957).

the train and the truck. He stated that he did not hear the train whistle before the collision, although he was awake and, as stated, heard the collision itself. On cross-examination, the witness was asked:

"Now suppose an officer of the law testifies that he was closer to the crossing than you were, between your house where you were at the time of this accident and this particular railroad crossing, and he testifies that he not only saw, but he heard this whistle blowing before it got there to the crossing, would you contradict him?"

After an objection to the question had been overruled by the court, the examination continued as follows:

"Q. Would you contradict him?

A. Yes, sir."

The witness said that he did not know the people involved in the wreck, or their families; that he had "never seen nary one of them."

Lilly Verne Smith, who testified that she lived less than 500 feet from the crossing, stated that she heard the impact of the collision, but prior thereto, she heard neither the blowing of a whistle nor the ringing of a bell. The witness said that she was in her living room at the time of the collision; further, that she knew none of the parties.

Appellees argue that the evidence mentioned was not the substantial evidence required to avoid a directed verdict, pointing out that Watson only testified that he did not hear a whistle blow, and Lilly Smith simply testified that she heard neither a whistle nor a bell. We disagree with appellees that this evidence was insufficient to take the case to the jury, and we have held contrary to the contention of appellees in several railroad cases. In *St. Louis-San Francisco Railway Company* v. *Horn*, 168 Ark. 191, 269 S.W. 576, this court said:

"It is undisputed that the crossing signal was given at the whistling post with the customary four blasts of the

whistle, but there is, we think, a substantial conflict in the testimony as to whether or not any signals were given thereafter. The engineer and fireman both testified that the bell was kept ringing from the whistling post down to the crossing, and the engineer testified that the whistle was sounded again after passing the post and before reaching the crossing. But there is substantial testimony from which the jury might have found that there were no signals given, either by bell or whistle, after the whistle was sounded at the post. *It is contended by learned counsel for appellant that the testimony on that point is merely negative, but we are of the opinion that the testimony is of more force than that. Witnesses testified that they did not hear the bell, and the jury might have found that the bell was not rung, otherwise the witnesses would have heard it.* " [Our emphasis]

Likewise, in *St. Louis Southwestern Railway Co. v. Hopkins*, 196 Ark. 657, 119 S.W. 2d 542, we stated:

"Appellants call attention to the testimony of appellee's four witnesses (other than appellee), all of whom testified negatively as to signals—that is, they did not hear the bell or whistle. It is urged on behalf of appellant that the substance of such testimony is that the witnesses did not know whether the signals were, or were not, given. Appellee testified that the signals were not given. This testimony is contradicted by witnesses for appellants who were not connected in any way with the case, and who are referred to as disinterested witnesses. They testified that the bell was being rung and that the whistle was being blown."

We held that there was a question of fact for the jury's determination and affirmed the judgment. Our holding in *Missouri Pacific Raolroad Company, Thompson, Trustee v. Rogers*, 206 Ark. 1052, 178 S.W. 2d 667, was exactly the same, where we stated:

"This argument rests upon the theory that the testimony relating to the ringing of the bell is negative in its character and, therefore, wholly lacking in evidentiary value. Many decisions of this court may be found declaring the rule to be, that where a witness, in posses-

sion of his faculties of hearing, was so situated that he would have heard signals had they been given, testifies that he heard no such signals, such testimony cannot be classed as negative in its character. Such testimony is treated as being affirmative testimony, tending to establish the fact that such signals were in fact not given, ι ηd is entitled to such weight as the jury sees fit to give it." (Citing cases).

See also *Missouri Pacific Railroad Co.* v. *Yarbrough*, 229 Ark. 308, 315 S.W. 2d 897, and *Missouri Pacific Railroad Co.* v. *McDaniel*, 252 Ark. 586, 483 S.W. 2d 569 (1972).

In accordance with what has been said, we find that the trial court erred in directing the verdict for appellees.

It is also asserted that the court erred in failing to allow the case to go to the jury because of evidence relating to foliage and debris, appellants contending that such foliage obstructed the view of those approaching the crossing. in violation of Ark. Stat. Ann. § 73-631 (Supp. 1973).[2]

The evidence in the record on this point is rather meager, consisting of the testimony of Lilly Smith, photographs which were offered into evidence, and the State Police Report by the officer who investigated the occurrence. Inasmuch as the judgment is herein reversed on point one, and the evidence on point two will likely be more fully developed in a new trial, we see no necessity to discuss the latter contention.

The judgment is reversed and the cause remanded to the Lee County Circuit Court for further proceedings not inconsistent with this opinion.

---

[2]§ 73-631 is as follows:

"Hereafter, all railroad corporations operating in this State shall maintain their right of way at or around any railroad crossing of a public road or highway free from grass, trees, bushes, shrubs or other growing vegetation which may obstruct the view of pedestrians and vehicle operators using the public highways, for a distance of one hundred (100) yards in all right of way directions from such railroad crossing."