Johnnie Eugene COCKMAN *v.* WELDER'S
SUPPLY COMPANY and HOME
INSURANCE COMPANY

78-326                                        580 S.W. 2d 455

Opinion delivered April 30, 1979
(In Banc)

[Rehearing denied May 29, 1979.]

*Pearce & Robinson* and *Richard L. Mattison*, for appellant.

*Lowe & Hamlin*, and *Tom Forest Lovett*, P.A., for appellees.

FRANK HOLT, Justice. Appellant, injured when a grinding disc he was using disintegrated or exploded, brought suit

to recover damages for strict liability, breach of warranty, and negligence against appellee Welder's, a retail distributor of grinding discs, and Gulf States Abrasive Manufacturing Co., the manufacturer. Home Insurance Company, the workmen's compensation carrier for appellant's employer, Benton Crawler Works, intervened. The suit against Gulf States was settled and dismissed prior to trial by agreement of the parties. At the conclusion of appellant's case, appellee Welder's motion for a directed verdict was granted. Appellant asserts the court erred. We hold the court was correct.

In the determination of a court's correctness in directing a verdict, we take the evidence and all reasonable inferences most favorable to the party against whom the verdict was directed and, if there is any substantial evidence tending to establish an issue in favor of that party, it is error to take the case from the jury. *Daniels* v. *Chicago, R.I. & Pac. R.R.*, 256 Ark. 874, 511 S.W. 2d 175 (1974); and *Barrentine* v. *The Henry Wrape Co.*, 120 Ark. 206, 179 S.W. 328 (1915).

Appellant states that, since the proof necessary to impose liability on the theory of strict liability or implied warranty of merchantability is essentially the same, he will discuss his evidence in terms of strict liability although his evidence also demonstrates the appellee's liability for breach of warranty. He argues that he met his burden of proof of presenting a factual issue as to strict liability by demonstrating a defect in a product through circumstantial evidence, citing *Higgins* v. *General Motors Corp.*, 250 Ark. 551, 465 S.W. 2d 898 (1971). There, although we did not judicially recognize the theory of strict liability in tort, in discussing a party's burden when suing for damages under that theory, we said:

In the absence of direct proof that the product is defective because of a manufacturing flaw or inadequate design, plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant.

Subsequently, our legislature recognized strict liability by enacting Ark. Stat. Ann. § 85-2-318.2 (Supp. 1977), which provides:

A supplier of a product is subject to liability in damages for harm to a person or to property if:
(a) the supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing such product;
(b) the product was supplied by him in a defective condition which rendered it unreasonably dangerous; and
(c) the defective condition was a proximate cause of the harm to person or to property.

Appellant argues that he had adduced sufficient evidence to show that the grinding disc was supplied by the appellee distributor in a defective condition which rendered it unreasonably dangerous, and its defective condition was the proximate cause of his injuries.

Appellee Welder's is engaged in the business of selling and distributing grinding discs and other supplies. It supplied appellant's employer with this grinding disc in August, 1973. From the time of appellant's employer's receipt of the disc, 10 months previously, to the date of appellant's injury, the disc was stored, hanging on a nail, in an area of the shop in which there were no activities which would disturb the disc. According to the shop foreman, who was present every day, the disc had not been disturbed although the area was open to the public. The foreman had properly attached the disc to the grinding machine the night before appellant's use and resulting accident. It had not been used previously. Normally, it would last through several days of continuous use before wearing out. Appellant was using the disc properly and had, at the time of his injury, been using it for only 20 or 30 minutes when it unexpectedly exploded. According to appellant's expert witness, the disintegration was not caused by a malfunction of the grinding machine, and the machine was running smoothly at a speed less than that recommended as the maximum for the disc. He could find nothing that indicated a manufacturing defect. He felt that, sometime after its manufacture, a defect had been injected into the disc. Appellee's method of transporting the

discs, loose in its truck, was not a proper or desirable way to transport the discs. All safety guidelines concerning the handling of abrasives, including grinding discs, were designed to prevent them from receiving any sort of shock by bouncing around or into one another. The disc would be subject to damage if struck an impact blow. When the witness was presented with a hypothetical question containing assumptions of the recited evidence, which included that the disc was transported loose in the trailer of a truck when delivered by appellee, the disc had been stored undisturbed for 10 months after purchase from appellee by appellant's employer, and it was mounted and used properly, it would be his opinion that the disc was defective when sold and delivered by appellee Welder's to appellant's employer.

On cross-examination as to the basis of his opinion, this witness admitted that he had made a previous report to the insurance compensation carrier, the intervenor, that "[i]n summary, I find no conditions with either the air grinder or the grinding disc that would have caused this accident," based upon an examination of the disc fragment. This was still his conclusion at the time he testified at trial; he was not able to tell the jury "with any real certainty that it was defective when it was delivered [by appellee] on August 9 or 8"; it was beyond his ability to make a determination as to why the disc exploded; it was also beyond his ability to determine that the disc was defective when it was delivered by appellee to appellant's employer; since the disc fragmentized, a defect occurred at some point in time; however, it was beyond his ability to determine when the defective condition was injected; he had no information whereby he could "with reasonable certainty" form an opinion that the disc was not properly manufactured or at the time of delivery to appellee and by appellee to appellant's employer "it had a defect or did not have a defect;" and finally, he could not "arrive at a conclusion to any reasonable degree of certainty whether it [the disc] was defective or not."

In *Ark. State Highway Comm'n. v. Byars,* 221 Ark. 845, 256 S.W. 2d 738 (1953), we said:

Whether there is substantial evidence to support a verdict is not a question of fact, but one of law. Because a

witness testifies as to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion.

There we reiterated that "to support a verdict the evidence must be of a convincing nature, imparting qualities of reasonable certainty." See also *Sadler v. Scott,* 203 Ark. 648, 158 S.W. 2d 40 (1942); and *St. Louis Southwestern Ry. Co. v. Braswell,* 198 Ark. 143, 127 S.W. 2d 637 (1939). In *Kapp v. Sullivan Chevrolet Company,* 234 Ark. 395, 353 S.W. 2d 5 (1962), we reiterated that "[c]onjecture and speculation, however plausible, cannot be permitted to supply the place of proof."

Appellant's burden of demonstrating a fact issue was dependent upon his expert's testimony. In summary that witness admitted there was nothing in his examination of the disc fragment which would lead him to a conclusion with any reasonable degree of certainty that the disc was defective when sold by the appellee to the appellant's employer. It was beyond his ability to say why the disc exploded. Viewing appellant's evidence most favorably, we cannot say that it negates all possibilities sufficiently to remove the asserted issue of liability from the realm of speculation and conjecture so as to entitle him to have the question presented to the jury.

Appellant next argues, with respect to negligence, that he adduced sufficient evidence on the issue of proximate causation. We have said that proximate cause must be proved, as a fact, by circumstantial or direct evidence, and not by speculation or conjecture. *Superior Forwarding Co. v. Garner,* 236 Ark. 340, 366 S.W. 2d 290 (1963). In an action for negligence, the evidence is sufficient to show proximate cause if the "facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred." *St. Louis-San Fran. Ry. Co. v. Bishop,* 182 Ark. 763, 33 S.W. 2d 383 (1931); see also *Glidewell v. Arkhola Sand & Gravel Co.,* 212 Ark. 838, 208 S.W. 2d 4 (1948). Here, although there was evidence that the explosion of the disc caused appellant's injuries, there was no evidence from which it could be fairly inferred that any action by appellee Welder's was the proximate cause of the exploding disc and appellant's resulting injuries. Appellant's evidence as to

proximate cause is not sufficient to remove it from the realm of conjecture or speculation.

Affirmed.

BYRD and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. For the reasons stated in the majority opinion I must respectfully dissent. The work load has apparently overtaken my brothers on the Court because they have in this opinion seated themselves in the jury box instead of on the bench.

It amazes me that we stated in *Higgins v. General Motors Corp.,* 250 Ark. 551, 465 S.W. 2d 898 (1971) that if we had strict liability in a case like this we would approve it, then the General Assembly enacted Ark. Stat. Ann. § 85-2-318.2 (Supp. 1977) to cover the subject, and now we say we really didn't mean what we said in *Higgins.* The statute has been set out in the majority opinion and in the interest of brevity will not be repeated.

There is no dispute that appellee was the supplier of the product which proximately caused appellant's injury. Neither is it disputed that the supplier was engaged in selling this product nor that the defective condition was the proximate cause of the harm to appellant.

After setting out an almost perfect case against appellee, the majority then turn around and quote from a decision "to support a verdict the evidence must be of a convincing nature, importing qualities of reasonable certainty." This, I contend, is for the jury to decide.

I find no fault in the law as stated by my brothers but I strongly disagree with the results reached. All we know about the manufacturer is that the case was dismissed. There is not a speck in the record which speaks of a settlement having been reached. It should not make any difference in this case how the manufacturer got out of the case. Maybe appellant thought his proof against them was no more than conjecture or speculation and the best strategy was to go against a single defendant.

Appellant's expert found the grinder on which the disc was used not to be defective. The shop foreman testified that the disc had been properly stored and correctly attached to the grinder. Appellant's witnesses effectively negated any defect occurring after the disc was delivered by appellee. The expert testified, eseentially, as follows:

> I did examine the disc fragments that were brought me. Assuming that Johnnie Cockman on May 30, 1974, was injured at his place of employment when a grinding disc exploded; that the disc was a 9 inch by 1/4 inch type 27 grinder disc, type 27 which means depressed center wheel mounted on a portable grinding machine; that a previously unused disc was mounted even before the accident; that it had not been used; that it was first utilized for 20 to 30 minutes on the morning of the accident; that the disc was purchased August 9, 1973 from a truck operated by Welder's Supply; that the discs were carried loose on the trailer of the truck; that it was transported after it leaves Malvern to the Benton Crawler Works in Benton; that it was stored after purchase in a storage area of Benton Crawler Works and was not disturbed from the time of purchase until the day before the accident happened when it was mounted on the machine; that it was properly mounted and attached and was being used flat against the track of a crawler type dozer to remove or smooth down excess welding material; that it was not put into a bin; that the grinder did not over-rev as I have previously testified, it is my opinion that the disc was defective and was defective when sold by Welder's Supply Company.

> It is my opinion that if it was properly used and so forth and since there was no problem with the grinder, the only opinion I can derive is that the disc was defective. And that it was defective when delivered by Welder's Supply to Benton Crawler Works.

This testimony, when considered with his testimony that he could find no defect in the manufacturing process, clearly carries possible liability to the supplier and the purchaser.

The purchaser's witnesses at least made a case for the jury against appellee when they testified that the disc was not damaged while in custody of the purchaser. The testimony also pointed to the driver for the seller by showing he hauled the disc in a manner likely to cause a defect. Any type of major impact would probably inject a defect into the disc thereby rendering it likely to explode when placed into service or use.

My brothers misinterpret the expert's testimony when he testified that he could find no manufacturing defect and that he could find no defect in the grinder and further that he could not say with any "real certainty" that it was defective when delivered by appellee. Of course, he could not say it was defective when delivered. Only a fool would so testify to such under the circumstances. All he was saying was that he found no defect in the manufacture of the disc nor in the grinder. This left only two other probabilities: It was damaged by the seller or the purchaser. He had no knowledge of how it was handled by the parties except for the testimony offered by the witnesses. However, the purchaser's witnesses eliminated him by showing exactly how it was stored and handled before use.

I need not cite authority for the proposition that we are supposed to give the evidence its strongest probative force when reviewing a directed verdict. The expert's testimony, standing alone, created a jury question as to the seller and purchaser although the purchaser was not a named defendant because his liability was limited to worker's compensation benefits.

Appellant offered substantial evidence, whcch, if believed by the jury, would meet every element set out in Ark. Stat. Ann. § 85-2-318.2 regarding strict liability. Therefore, I ask whether or not we meant it when we stated in *Higgins*:

> In the absence of direct proof that the product is defective because of a manufacturing flaw or inadequate design, plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference

that the dangerous condition existed while the product was still in the control of the defendant.

Apparently the majority still holds that even after enactment of the strict liability statute a plaintiff still may not recover on circumstantial evidence. I do not so interpret the law or the decisions made in the past.

For these reasons, and many more, I would reverse and remand with directions to allow the jury to decide the fact questions, assuming, at least, the same amount of circumstantial evidence is presented at the new trial.

I am authorized to state that BYRD, J., joins me in this dissent.