NORTHSIDE CONSTRUCTION CO. *v.* Jessica
HUFFMAN

85-87                                               697 S.W.2d 89

Supreme Court of Arkansas
Opinion delivered October 14, 1985

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellant.

*Dale Varner*, for appellee.

JACK HOLT, JR., Chief Justice. Appellee claims her property was damaged when the appellant conducted blasting operations to lay a water pipeline across the property. During the trial, the appellant asked for a directed verdict, which was denied. The jury returned a judgment for damages in favor of the appellee, and the appellant then sought a judgment notwithstanding the verdict.

That motion was also denied. It is from these two rulings that this appeal is brought. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(o) as this case presents questions in the law of torts.

The basis for both of the appellant's, Northside Construction Co.'s, motions was that appellee, Jessica Huffman, failed to produce any evidence of negligence, and did not prove that Northside's blasting operation was the proximate cause of the injury to her property.

■■ In reviewing the denial of motions for directed verdict and for judgment notwithstanding the verdict, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party against whom the motions are sought. Both motions should be granted only if there is no substantial evidence to support a jury verdict. *Green* v. *Gowen*, 279 Ark. 382, 652 S.W.2d 624 (1983); *McCuistion* v. *City of Siloam Springs*, 268 Ark. 148, 594 S.W.2d 233 (1980); see Ark. R. Civ. P. 50.

The jury was instructed on both absolute liability and negligence. However, in submitting separate verdict forms to the jury for findings on interrogatories, questions as to absolute liability were not tendered. The jury was left with verdict forms for findings based upon negligence and proximate cause only. Accordingly we will not consider the issue of absolute liability and instead review the evidence as to negligence and proximate cause. The jury returned a verdict by interrogatories finding that Northside was negligent and that Northside's negligence was the proximate cause of the damage to Mrs. Huffman's property in the amount of $12,500.

■■ Northside's first argument is that Mrs. Huffman failed to offer any proof as to negligence. A prima facie case of negligence is established in a blasting case where the evidence of the results and surrounding circumstances of a blast shows that under ordinary circumstances such a result could not have occurred unless the blast was negligently performed. 35 C.J.S. *Explosives* § 11(6)(b) p. 300 (1960). Furthermore,

> [a] violent and unusual result from blasting may constitute evidence from which may be inferred a lack of proper care as to the amount of explosive used or the

manner in which the explosive was placed and discharged, this being particularly true where rocks or debris are thrown by the blast.

*Id.*

■ Using this criterion, the evidence presented in this case was sufficient to support a finding of negligence. Mrs. Huffman testified that within a week after Northside completed its blasting operation, three natural springs on her property, which have never gone dry in the 16 years she's lived there, dried up. She further alleged that her fence posts were blown over and her pasture was damaged and that large boulders were blown out of the ground and into the road, damaging electrical power poles which run along her fence line. Mrs. Huffman's son corroborated her testimony as to the damage to the springs, the power poles, and the gate. He further stated that he saw boulders blown across the fence.

Mrs. Huffman also offered evidence from Robert Wayne Langston, who testified as an expert in geology, that the springs on the Huffman property were fed by a perched aquifer, a zone of sandstone rock saturated with ground water which has a large set of fractures in it. The fractures act as passageways to carry the water, according to Langston, and blasting could disrupt that system. He also testified it would take a large blast to blow boulders into the street and damage the power lines, and that such damage can be prevented by the use of blasting mats, which were not used in this instance.

■ Although Northside offered contradictory evidence, we have long held that decisions as to witnesses' credibility and the weight to be accorded their testimony are the province of the jury and will not be disturbed on appeal. *Dildine* v. *Clark Equipment Co.,* 285 Ark. 325, 686 S.W.2d 791 (1985).

■ The appellant also maintains no proof was offered that the blasting was the proximate cause of the damages to Mrs. Huffman's property. We have held that "[i]n an action for negligence, the evidence is sufficient to show proximate cause if the 'facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred' (citation omitted)," *Cockman* v. *Welder's Supply Co.,*

265 Ark. 612, 580 S.W.2d 455 (1979), *rehearing denied.*

This court has previously addressed the specific question of damage to a water supply caused by blasting. In *McGeorge* v. *Henry & Jamison*, 193 Ark. 443, 101 S.W.2d 440 (1937) we found the evidence was sufficient to show that the blasting caused a disturbance in the rock strata under the plaintiffs' lands in such a way as to drain or dry up their wells. Part of the proof at trial was that the plaintiffs had a good water supply until five days after the blasting when the wells failed.

We have also found the evidence sufficient to warrant the conclusion that an excessive amount of explosives was used where wells dried up, houses were shaken, and rocks and gravel were thrown 150 feet from the blasting. *Benton Gravel Co.* v. *Wright*, 206 Ark. 930, 175 S.W.2d 208 (1943).

As stated previously, Langston testified that the blasting could have disrupted the fracture system which carried the water to Mrs. Huffman's springs. Northside's expert geologist, Wendell Martin Goodman, testified that he thought a lack of rainfall for four out of the last six years could have caused the springs to dry up. Mr. Goodman acknowledged, however, that if the fractures in the ground were enlarged by a significant ground disturbance they would leak more water and that is one possible explanation for why the springs would dry up more quickly when there is a lack of rainfall.

The testimony offered as to the effect of blasting on the underground water system was sufficient to show proximate cause.

Affirmed.

PURTLE, J., not participating.