SOUTHWESTERN BELL TELEPHONE CO. *v.*
OUACHITA ELECTRIC COOPERATIVE CORP.

85-139                                                    699 S.W.2d 737

Supreme Court of Arkansas
Opinion delivered November 25, 1985

*Jay E. Hoggard*, for appellant.

*Roberts, Harrell, Lindsey & Foster, P.A.*, by: *Searcy W. Harrell, Jr.*, for appellee.

JACK HOLT, JR., Chief Justice. While digging holes to set poles to rebuild a distribution line, the appellee, Ouachita Electric Cooperative Corp., cut some buried cable owned by appellant, Southwestern Bell Telephone Co. The telephone company filed suit alleging negligence and seeking $1,016.96 for repairs to the damaged cable. The case was tried to a judge sitting as a jury and a verdict was returned for Ouachita Electric. It is from that verdict that this appeal is brought. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(o).

Six months before the digging began, Southwestern Bell, at Ouachita Electric's request, sent a representative to the work site to locate buried cable. At the trial of the matter, Southwestern Bell maintained it was negligent for Ouachita Electric to wait six months after the locate was made to begin digging. Furthermore, the telephone company alleged Ouachita Electric was negligent when, after the cable was cut for the first time, the digging was continued and a second cut was made in the cable. Neither argument has any merit.

The testimony indicated that in August, 1983, the telephone company representative made paint markings at the site locating the cable, and approved the electric company's placement of poles to mark the line along which it would dig. The digging began in January, 1984, and the cable was cut.

Two Southwestern Bell employees testified that the difficulty with waiting six months to begin digging is that the paint used to mark the line could have disappeared, the cable could have been relocated, the stakes could have been moved, lightning could damage the site, or other utilities could have come in and added water or gas lines.

No evidence was presented that any of these acts did occur, or that anything happened to change the markings during the six month interval. J.O. Tucker, the telephone company employee who did the locate for the site, testified, in fact, that he did not have an opinion as to why the cable was cut because he could see after the damage occurred that the power poles were still in a straight line.

The electric company offered the testimony of Tyson Greening, the manager of the company, who was present during the August locate. Mr. Greening stated he did not request a second locate when digging began:

> Because I, personally, was there when this representative located their cable and I know. I was in on the staking of this line and I know the stakes were in the same location and has not been moved. . .

> It couldn't have moved by very very little. If it had been any other lines, installers, stakes wouldn't even have been there. They'd have been tore down. Everything was intact, just as we staked it.

He further explained that he would have noticed if something had occurred during the six months because he was at the site about once a week.

As to the electric company's action in continuing to dig after the cable was damaged, Southwestern Bell did not offer evidence of an industry standard requiring immediate cessation of activity after a cable is cut, nor did it indicate the extent, if any, to which its damages were enhanced by the second cut. Furthermore, Mr. Greening testified that when a new locate was performed after the cable was cut, no stakes had to be moved.

The trial court found that the passage of time would have been the proximate cause of Southwestern Bell's damages if the situation had changed from the time of the locate until the time of the cable cut. The court found, however, that there was no evidence of such change and Southwestern Bell had not sustained its burden of proof.

We agree. There is a positive duty imposed on one excavating below the ground to inform himself as to whether telephone cables are there so he can avoid damaging them. *See* 74 Am Jur 2d *Telecommunications* § 36 p. 339 (1974); Annotation, 73 ALR 3d 987, § 3 p. 991 and § 4 pp. 999-1000 (1976). This was done. Therefore, without some positive evidence that a change occurred during the six month interval so as to make the delay negligent, Southwestern Bell did not meet its burden of proof.

We have held that "proximate cause must be proved,

as a fact, by circumstantial or direct evidence, and not by speculation or conjecture." *Cockman* v. *Welder's Supply Co.*, 265 Ark. 612, 580 S.W.2d 455 (1979), *rehearing denied*. Similarly, this court has stated that "[n]egligence cannot be established by guess work" and "where proven facts give equal support to each of two inconsistent inferences, neither of them can be said to be established by substantial evidence and judgment must go against the party upon whom rests the burden of sustaining one of the inferences as against the other (citation omitted)." *Kapp* v. *Sullivan Chevrolet Co.*, 234 Ark. 395, 353 S.W.2d 5 (1962), *rehearing denied*.

Here, the proven facts were that Southwestern Bell located its buried cable for Ouachita Electric and six months later, during the digging, the cable was damaged. Neither side could prove the cause of the cutting but inasmuch as Southwestern Bell had the burden of proving negligence, the findings must go against it.

Affirmed.

PURTLE, J., not participating.